UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEORGE SCHULZ and PABLO CARDONA, individuals on behalf of themselves and all persons similarly situated,<br><br>Plaintiffs,<br>vs.<br><br>QUALXSERV, LLC; and WORLDWIDE TECHSERVICES, LLC,<br><br>Defendants. | CASE NO. 09-CV-17-AJB (MDD) (consolidated with 09-CV-2081)<br><br>**ORDER GRANTING MOTION FOR CLASS CERTIFICATION**<br><br>[Doc. No. 77] |

The Court heard oral argument on Plaintiffs' motion to certify this employment class action on July 8, 2011. Having considered the briefs, the arguments of counsel, the record, and the governing law, the Court **GRANTS** Plaintiffs' motion.[1] The Court certifies a class of all individuals employed in California by Defendants QualxServ, LLC and Worldwide TechServices, LLC as a QualxServ Service Partner, Service Partner, or Part Time Field Service Representative who were paid by piece-rate compensation during the period from January 6, 2005 to present. The class claims are alleged in the Consolidated Complaint in the second through tenth causes of action which allege denial of overtime compensation, failure to pay wages for compensable meal and rest break periods, failure to pay minimum wage rates and time worked "off the clock," failure to fully reimburse employees for necessary business expenses, failure to pay all final accrued wages at the time of termination, late payment of final accrued wages, failure to furnish accurate

---

[1] All parties have waived any potential conflict arising out my work on this case as the Magistrate Judge prior to my appointment as a District Judge.

itemized wage statements, and unfair competition. These claims are based upon California Labor Code §§ 201-203, 218.6, 226, 226.7, 510, 512, 516, 1194, 1194.2, 1197, 1197.1, 2802, 2804 as well as Industrial Welfare Commission Orders Nos. 4-2000 and 4-2001 and California Business and Professions Code §§ 17200-17208.

## **Background**

Defendants send field technicians to repair and service computers at businesses and private homes throughout California. Consol. Compl. ¶¶ 2, 24, 26-30. The representatives are two former technicians, George Schulz and Pablo Cardona. *Id.* ¶¶ 15-16.

According to the class allegations in the Consolidated Complaint, Defendants pay a flat rate (between $28 and $38) for each completed service call. *Id.* ¶ 3. The piece-rate compensated employees for the hours worked on assignment, travel time, and expenses such as gas and parking, but precluded reimbursement for out-of-pocket expenses, such as vehicles, cell phones, computers, internet service, and tools. *Id.* ¶ 3, 36. If the technician drives more than 35 miles to a customer, Defendants will reimburse for mileage, but at a rate below the "presumptively reasonable" rate. Pls.' Mot. at 4. Each morning, the technician logs onto the Defendants' computer system to review assignments and then call the customer to set up an appointment time. *Id.* The technician must pick up the necessary parts before noon. *Id.* at 4-5. At the end of the day, technicians must perform certain "postliminary" procedures.

These facts underlie the various state law claims that Plaintiffs seek to pursue on behalf of a class of similarly-situated technicians.[2] First, Plaintiffs allege Defendants violated § 2802 of the

---

[2] The second through ninth causes of action rely on California employment laws, while the tenth claim alleges that each violation also constitutes unfair competition. There is some factual overlap between the legal theories, but for purposes of this motion, the Plaintiffs divide their class claims into six categories.

Plaintiffs filed this action based upon California's Private Attorney General Act which permits employees to enforce labor laws and collect civil penalties. Cal. Lab. Code § 2699(a); Consol. Compl. ¶ 94. This claim does not require certification as a class because it "functions as a substitute for an action brought by the government itself." *Arias v. Super. Ct.*, 46 Cal. 4th 969, 980-87 (2009).

Plaintiffs will pursue the federal claim on an individual basis. Pls.' Mo. at 1 n. 1; Consol. Compl. ¶¶ 50-53 (Fair Labor Standards Act, 29 U.S.C. §§ 207, 211(c), 216(b)).

On a housekeeping matter, the Court finds that Plaintiffs waived any right to certify a

1 Labor Code by failing to reimburse employees "for all necessary expenditures or losses incurred
2 by the employee in direct consequence of the discharge of his or her duties." Cal. Labor Code §
3 2802(a); Consol. Compl. ¶ 73 (sixth claim). Namely, Defendants allegedly failed to reimburse
4 technicians for the use of their personal cars, cell phones, and tools even though these items are
5 necessary to perform their job duties.

6 Second, Plaintiffs allege a failure to pay minimum and overtime wages. Cal. Lab. Code §§
7 510 (defining eight-hour day and forty-hour week), 1194 (authorizing employee to file civil action
8 to recover "minimum wage or the legal overtime compensation"), 1197 (requiring payment of
9 minimum wage); Consol. Compl.¶¶ 7-9, 31-33, 35, 55 (second claim), 69 (fifth claim). For
10 example, Plaintiffs allege that Defendants enforced practices and policies that required employees
11 to perform job-related tasks "off the clock." Consol. Compl. ¶ 69. If Defendants properly
12 recorded the time spent on preliminary and postliminary work activities, many technicians would
13 allegedly be entitled to overtime pay.

14 In related claims, Plaintiffs also allege Defendants failed to provide meal and rest break
15 periods. Consol. Compl. ¶¶ 63 (third claim), 66 (fourth claim). These claims are based on
16 California Labor Code § 512 and § 226.7 as well as the IWC's Wage Order No. 4-2001 (meal
17 periods and total daily hours worked "shall" be recorded).

18 Fourth, Plaintiffs allege that Defendants failed to provide accurate, itemized wage
19 statements pursuant to California Labor Code § 226.[3] Consol. Compl.¶ 86 (ninth claim). For
20 instance, the pay statements did not accurately reflect the hours worked and other details required
21 by statute. *Id.* ¶¶ 11-12, 40.

---

23 class of "Incentive-Based Technicians." Defendants disclosed the existence of this position
24 in a timely fashion during a deposition on February 4, 2010. Liburt Decl., Ex. 5 (Lombardi Depo. at 152-53).

25 [3] In relevant part, that statute states, "[e]very employer shall, semimonthly or at the time
26 of each payment of wages, furnish each of his or her employees . . . an accurate itemized statement in writing showing (1) gross wages earned, (2) total hours worked by the employee,
27 except for any employee whose compensation is solely based on a salary and who is exempt from payment of overtime . . . , (3) the number of piece-rate units earned and any applicable
28 piece rate if the employee is paid on a piece-rate basis, (4) all deductions, . . . (5) net wages earned, . . . (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee." Cal. Lab. Code § 226(a).

1  Fifth, Plaintiffs contend Defendants did not pay employees who were terminated their final
2 paycheck within 72 hours.  Cal. Labor Code §§ 201 (immediate payment of wages upon
3 discharge), 202 (immediate payment of wages upon resignation), 203 (penalty for untimely
4 payment); Consol. Compl. ¶¶ 35, 39, 79 (seventh claim), 82 (eighth claim).  Instead, Defendants
5 allegedly waited until the next regular payday to send the final check.

6  As remedies for these claims, Plaintiffs seek a declaratory judgment, an injunction,
7 damages, penalties, restitution, interest, and attorney's fees.  Consol. Compl. at pp. 34-38.

8  Sixth and finally, Plaintiffs allege these labor law violations constitute unfair and unlawful
9 business practices.  Cal. Bus. & Prof. Code § 17200; Consol. Compl. ¶¶ 32-34, 38, 40, 90-92
10 (tenth claim).  California's Unfair Competition Law ("UCL") provides for an injunction or other
11 relief as necessary to restore money acquired by unlawful competition.  Cal. Bus. & Prof. Code §
12 17203; *ABC Int'l Traders, Inc. v. Matsushita Elec. Corp.*, 14 Cal. 4th 1247 (1997) (remedy
13 includes restitution).

14 **<u>Discussion</u>**

15  "The class action is 'an exception' to the usual rule that litigation is conducted by and on
16 behalf of the individual named parties only." *Wal-Mart v. Dukes*, 131 S. Ct. 2541, 2550 (2011).
17 California's clear public policy to enforce its labor laws for the benefit of workers encourages the
18 use of the class action device. *Sav-on Drug Stores, Inc. v. Super. Ct.*, 34 Cal. 4th 319, 340 (2004).

19  To obtain certification in federal court, a plaintiff bears the burden of proving that the class
20 meets all four requirements of Rule 23(a) – numerosity, commonality, typicality, and adequacy –
21 *and* that it satisfies one of the three categories of Rule 23(b). *Ellis v. Costco Wholesale Corp.*, 657
22 F.3d 970, 979-80 (9th Cir. 2011).  Here, Plaintiffs rely on Rule 23(b)(3), which authorizes
23 certification when "questions of law or fact common to class members predominate over any
24 questions affecting only individual class members," and "a class action is superior to other
25 available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P.
26 23(b)(3).

27  "The amount of damages is invariably an individual question and does not defeat class
28 action treatment." *Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir. 1975); *accord Stearns v.*

1  *TicketMaster Corp.*, 655 F.3d 1013, 1026 (9th Cir. 2011); *Yokoyama v. Midland Nat'l Life Ins.*
2  *Co.*, 594 F.3d 1087, 1089 (9th Cir. 2010).

3  Courts must engage in a "rigorous analysis" of each Rule 23 factor – even if that means the
4  court must evaluate the merits of the plaintiff's case. *Ellis*, 657 F.3d at 981. "[T]he merits for the
5  class members' substantive claims are often highly relevant when determining whether to certify a
6  class. More importantly, it is not correct to say a district court *may* consider the merits to the
7  extent that they overlap with class certification issues; rather, a district court *must* consider the
8  merits if they overlap with Rule 23(a) requirements." *Id.* Of course, the district court does not go
9  so far as to conduct a mini-trial to determine if the class "could actually prevail on the merits of
10 their claims." *Id.* at 983 n. 8; *United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus.*
11 *& Serv. Workers Int'l Union, AFL-CIO v. ConocoPhillips Co.*, 593 F.3d 802, 808 (9th Cir. 2010)
12 ("The court may not go so far . . . as to judge the validity of these claims.") (citation omitted).

13 **A.  The Four Requirements of Rule 23(a)**

14 **1. Numerosity**

15 The proposed "class is so numerous that joinder of all members is impracticable." Fed. R.
16 Civ. P. 23(a)(1). Plaintiffs identified over three hundred potential employees who may join the
17 class. The Court finds this number sufficient to fulfill the numerosity requirement. *Alonzo v.*
18 *Maximus, Inc.*, 275 F.R.D. 513, 520 (C.D. Cal. 2011) (certifying class of 336 employees).

19 **2. Commonality**

20 To satisfy the second element, Plaintiffs must show that "there are questions of law or fact
21 common to the class." Fed. R. Civ. P. 23(a)(2).

22 The Supreme Court's *Wal-Mart* decision clarified the focus of this inquiry. It is not
23 enough to list several questions, such as whether the defendant violated the same provision of law.
24 *Wal-Mart*, 131 S. Ct. at 2550-51. "Commonality requires the plaintiff to demonstrate that the
25 class members 'have suffered the same injury.'" *Id.* at 2551 (citation omitted). "Their claims
26 must depend upon a common contention . . . that is capable of classwide resolution – which means
27 that determination of its truth or falsity will resolve an issue that is central to the validity of each
28 one of the claims in one stroke." *Id.* "'What matters to class certification is not the raising of

common questions – even in droves – but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation.'" *Id.* (citation and alteration omitted). "The existence of shared legal issues with divergent factual predicates is sufficient" to satisfy the commonality element of Rule 23(a)(2). *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).

The Court finds that Plaintiffs have met this requirement because they challenge uniform policies and systemic practices that apply to this class of employees. Each claim is based on a specific statutory requirement. For example, Plaintiffs attack the written wage statements on their face because Defendants do not set out the hours worked or meal periods. Defendants identify a common defense to the rest break and meal period claims based on the nature of field work, where employees control their own breaks. Defs.' Opp. Br. at 16-17, 19-20. Another uniform defense is whether Defendants pay a higher salary that necessarily encompasses expenses. *Gattuso v. Harte-Hanks Shoppers, Inc.*, 42 Cal. 4th 554 (2007); Defs.' Opp. Br. 25-27. In sum, whether the Defendants' policies and practices comply with California's specific requirements is the type of question that can be answered on a classwide basis. *Wal-Mart*, 131 S. Ct. at 2551; *Dilts v. Penske Logistics, LLC*, 267 F.R.D. 625, 632-33 (S.D. Cal. 2010).

### 3. Typicality

This factor examines whether the claim of the representatives are "typical" of the claims of the absent class members. Fed. R. Civ. P. 23(a)(3). "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020; *Hanon v. Dataproducts Corp*, 976 F.2d 497, 508 (9th Cir. 1992) (typicality test is "whether other class members have been injured by the same course of conduct").

Defendants raise only one objection on this issue. They contend that neither Schulz nor Cardona identified a specific expense that should have been reimbursed or that was not covered by their piece-work wage. Defs.' Opp. Br. 23. Defendants insist that each employee must show their actual expenses were greater than the sums paid. *Id.* at 24.

The Court rejects this argument. "Typicality refers to the *nature* of the claim or defense of

the class representative, and not to the specific facts from which it arose or the relief sought." *Hanon*, 976 F.2d at 508 (emphasis added). Here, Plaintiffs' arguments about overtime, minimum wage, meal periods, rest breaks, and expenses are interrelated with their contention that the Defendants' wage statement is flawed on its face as well as in its application. *Hernandez v. Mendoza*, 199 Cal. App. 3d 721, 726 (1988) (when employer's records are inaccurate and employee shows he performed work for which he was not paid, court may approximate amount of damages).[4] As stated in *Elliot v. Spherion Pac. Work, LLC*, 572 F. Supp. 2d 1169, 1181 (C.D. Cal. 2008), an employer cannot shift the burden to the employee to determine if he has been paid all wages (including overtime) or reimbursed for all business expenses by failing to itemize the hours worked, deductions, and other required details in the pay statement.

### 4. Adequate Representation

The fourth requirement of Rule 23(a) is that the representatives, Schulz and Cardona, and the attorneys they hired, "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4); *Hanlon*, 150 F.3d at 1020.

The two named Plaintiffs state they do not have any conflicts of interest with the potential class members, therefore, their mutual interests are aligned. *Hanlon*, 150 F.3d at 1020-21. They hired competent counsel to "prosecute the action vigorously on behalf of the class." *Id.* at 1020. The Court concludes that Plaintiffs have met this requirement.

In opposition, Defendants contend that a conflict exists between the technicians who deducted work expenses on their income tax returns, and those who did not do so. The Court finds that this argument lacks merit. How an individual employee dealt with his expenses in terms of his own financial and tax planning is irrelevant to the question of whether the *employer* should have reimbursed the technicians in the first place. All of the proposed class members share the same interest in protecting their rights pursuant to California Labor Code § 2802.

---

[4] As an aside, Defendants argue that the named representatives lack standing because they cannot show they incurred an expense that was not compensated. The Court rejects this argument. Plaintiffs allege they were injured by inaccurate pay statements that confused or forced them to make the mathematical calculations to determine if they were paid fairly and completely. *Elliot*, 572 F. Supp. 2d at 1181; *Adoma v. Univ. of Phoenix, Inc.*, 270 F.R.D. 543, 553 (E.D. Cal. 2010).

1  Plaintiffs correctly note that this issue – whether or not an employee claimed a tax
2 deduction for business expenses – appears in every wage case, but has never prevented
3 certification. In any event, if an employee did take a tax deduction, that amount would merely be
4 considered income. *See Palmer v. Stassinos*, 233 F.R.D. 546, 550 (N.D. Cal. 2006) (though
5 different consumers may recover different amounts, "[t]he potential difference in recovery does
6 not in itself create a conflict between [the named representative] and the unnamed class
7 members").

8 **B. Rule 23(b)(3) Criteria for Damages**

9  A Rule 23(b)(3) class must satisfy two requirements: predominance and superiority.

10  **1. Common Questions Predominate**

11  First, the common questions must "predominate" over any individual questions. While
12 this requirement is similar to the Rule 23(a)(2) commonality requirement, the standard is much
13 higher at this stage of the analysis. *Wal-Mart*, 131 S. Ct. at 2556-57; *Amchem Prods. Inc. v.*
14 *Windsor*, 521 U.S. 591, 624-25 (1997); *Hanlon*, 150 F.3d at 1022. Rule 23(a)(2) can be satisfied
15 by even a single common question, but 23(b)(3) requires convincing proof that the common
16 questions "predominate." *Amchem*, 521 U.S. at 623-24; *Hanlon*, 150 F.3d at 1022. "When
17 common questions present a significant aspect of the case and they can be resolved for all
18 members of the class in a single adjudication, there is clear justification for handling the dispute on
19 a representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022.

20  **a. Reimbursement for Expenses**

21  Plaintiffs claim they are required to use their own cars, cell phones, home computers,
22 internet service, and tools in order to fulfill their job duties, but that Defendants' piece-rate
23 payment did not sufficiently reimburse them for these necessary expenses. Plaintiffs characterize
24 the predominate issue as whether Defendants' uniform business practice of paying a lump sum per
25 incident complies with *Gattuso v. Harte-Hanks Shoppers, Inc.*, 42 Cal. 4th 554 (2007).

26  In *Gattuso*, the California Supreme Court held an employer must fully reimburse sales
27 representatives who actually and necessarily incur automobile expenses in performing their
28 employment tasks. *Id.* at 567-68. The employer could meet that duty in different ways, including

(1) compensating actual expenses based on detailed records (including depreciation, insurance, registration, fuel, maintenance); (2) using the mileage reimbursement method based on the number of miles driven to perform job duties (which approximates the per-mile cost of owning and operating an automobile); or (3) paying a fixed, lump-sum that correlates to the number of miles routinely driven, "provided that the amount paid is sufficient to provide full reimbursement for actual expenses incurred." *Id. at 568-70.* "Of course, an employee must be permitted to challenge the amount of a lump-sum payment as being insufficient under section 2802. An employee may do so by comparing the payment with the amount that would be payable under either the actual expense method or the mileage reimbursement method. If the comparison reveals that the lump sum is inadequate, the employer must make up the difference." *Id.* at 571. Though not encouraged, the California Supreme Court held an employer could combine both wages and expense reimbursement in a "single enhanced employee compensation payment" with the caveat that employees, and regulators, must be able to "readily determine" the portion allocated to expenses so that § 2802 can be enforced. *Id.* at 572-73. The Supreme Court cautioned that employers should document the difference by "separately identify[ing] the amounts that represent payment for labor performed and the amounts that represent reimbursement for business expenses." *Id.* at 574 n.6.

Defendants argue the reimbursement claim involves an individualized inquiry into each technician's expenses, for example, the distance driven between service calls and the particular plan selected for internet and cell phone services. Defendants argue that they pay a higher wage to cover the necessary expenses and thereby comply with *Gattuso*'s approval of paying increased compensation. Plaintiffs dispute this. Pls.' Reply Br. at 3-4.

The Court is not persuaded by Defendants' objections because their arguments relate to the amount of damages incurred by an individual technician. *Stearns*, 655 F.3d at 1026; *Yokoyama*, 594 F.3d at 1089; *Blackie*, 524 F.2d at 905. The common question of whether Defendants' uniform reimbursement policy, as reflected in its standard wage statements, complies with *Gattuso* can be answered on a classwide basis. *Dilts*, 267 F.R.D. at 639-40 (certifying class of off-site truck drivers with respect to reimbursement for expenses, including lost tools).

### b. Overtime, Minimum Wage, and Off the Clock Activities

Defendants argue that individual factual issues dominate the class claim for overtime wages because it requires a determination of the "hours worked." That phrase is defined in Wage Order 7-2001 as "the time during which an employee is subject to the control of an employer." Defs.' Opp. Br. at 9. In *Morillion v. Royal Packing Co.*, 22 Cal. 4th 575, 586-88 (2000), the California Supreme Court held that the *level* of the employer's control determines whether time is compensable. Though an employee who must be shuttled to the work site in a company bus meets the control test, an employee who drives her own car from home to work may not be compensated. *Id.* Defendants argue they simply require the technicians to pick up replacement parts at the shipping facility before noon, but employees are free to stop on the way, for example, to eat breakfast or drop a child at school.

Defendants also argue that service technicians schedule their own days according to personal preferences, and many do not work enough hours to qualify for overtime; therefore, the Court will need to examine each individual's work day and week. Further, the amount of time to select jobs and schedule appointments is *de minimis*, and therefore, is not compensable. *See Lindow v. United States*, 738 F.2d 1057, 1062 (9th Cir. 1984) (interpreting federal labor statute). Also, Defendants defend their practice on the ground that they did not know the technicians were performing off the clock work since they work in the field. *See Forrester v. Roth's I.G.A. Foodliner, Inc.*, 646 F.2d 413, 414 (9th Cir. 1981) ("knowledge of the employer" is an element of federal claim).

The Court rejects these arguments because Plaintiffs challenge the uniform policy not to compensate service technicians for the specified activities. Defendants require the technicians to perform these daily tasks yet they do not record the time or pay the technician's for the time it takes to review calls on the computer; decline or accept calls; schedule appointments; drive to the facility to pick up required parts; close calls at the end of the day; or re-package parts. The application of the "control rule" is a common question that can be answered on a classwide basis. In addition, Defendants do use a system to record the time devoted to these daily duties by employees in *other* categories as well as by technicians who perform an early service call *before*

driving to the parts pickup facility. The common question is whether these tasks and travel time can be excluded from the calculation of whether employees are entitled to be paid, whether they qualify for overtime, and whether they have been paid minimum wage. *Adoma*, 270 F.R.D. at 548-51 (certifying class claim on off-the clock hours and employer's knowledge of uncompensated work); *Ortega v. J.B. Hunt Transp., Inc.*, 258 F.R.D. 361, 371-73 (C.D. Cal. 2009) (certifying class challenging piece rate compensation system for truck drivers); *Cervantez v. Celestica Corp.*, 253 F.R.D. 562, 576-77 (C.D. Cal. 2008) (certifying class on common question of whether workers must be paid for time waiting time in security line at shipping facility). Differences in the amount of an individual's damages caused by the allegedly unlawful policy does not defeat class certification. *Stearns*, 655 F.3d at 1026; *Yokoyama*, 594 F.3d at 1089; *Blackie*, 524 F.2d at 905.

### c. Meal and Rest Breaks

Defendants argue there is no evidence that it "deprived" technicians of meal or rest breaks as a general policy and, therefore, highly individual questions predominate over any common issue. *Brown v. Fed. Express Corp.*, 249 F.R.D. 580, 585-87 (C.D. Cal. 2008).

The California Supreme Court just resolved the split in the appellate courts concerning the employer's obligation to "provide" meal and rest breaks. *Brinker Rest. Corp. v. Super. Ct.*, No. S166350, (Cal. Sp. Ct. Apr. 12, 2012) (viewed on http:// www.courtinfo.ca.gov /opinions /documents/ S166350.PDF); *see Brinkley v. Public Storage, Inc.*, 87 Cal. Rptr. 3d 674 (2009). The Court held that "an employer's obligation is to relieve its employees of all duty with the employee thereafter at liberty to use the meal period for whatever purpose he or she desires, but the employer need not ensure that no work is done." *Brinker*, *supra* at 2, 27-30, 35-37 & n.19 (employee must be relieved of all duties for entire 30-minute meal period).

The Court finds that there are sufficient common questions under this standard because Plaintiffs' challenge the Defendants' common corporate policy of failing to relieve the technicians of all work during the rest and meal breaks. *Adoma*, 270 F.R.D. at 552-53 (noting unsettled California law but finding class issues predominate on meal periods); *Dilts*, 267 F.R.D. at 634-39 (certifying class of off-site truck drivers who worked through meal and rest breaks based on

company-wide, common practice); *Ortega*, 258 F.R.D. at 366-70 (common questions predominate because focus on employer's "compensation system, which applies in the same manner to all potential class members on all work days," regardless of California Supreme Court's decision on meaning of duty to "provide" rest and meal breaks); *Cervantez*, 253 F.R.D. at 576 (certifying class on common corporate policy concerning rest and meal breaks); *see Jaimez v. DAIOHS USA, Inc.*, 181 Cal. App. 4th 1286, 1305 (2010) (certifying class under California rules). Indeed, the California Supreme Court in *Brinker* held that the trial court properly certified a rest break class by challenging the employer's uniform policy. *Brinker*, *supra* at 2, 24-26; *cf. id.* at 50-51 (remanding question of class certification on meal break claim). In reaching that conclusion, the Supreme Court noted that if the employer prevails on its claim that its policy satisfies the law, then the defendant benefits from the preclusive benefits of a class determination. *Id.*

Moreover, Plaintiff's meal break claim is also based on Defendants' alleged failure to comply with Wage Order No. 4-2001, which requires the employer to "record" unpaid meal periods. If an employer fails to provide the meal break as required, the period shall be "counted as time worked," which entitles the employee to one hour of pay. 8 Cal. Code Regs. tit. 8, § 11090(11) (2012). Plaintiffs allege Defendants violated this rule as to the entire class because their standard pay stub does not include the required information.

### d. Accurate, Itemized Wage Statement

Plaintiffs contend that Defendants' standard wage statement violates California law because it fails to report all hours worked by employees, specifically, the preliminary daily activities, the time waiting to collect parts, and the tasks at the end of each day. This claim is related to other alleged substantive violations in that Plaintiffs contend the employees cannot calculate the amount apportioned for expenses and overtime. Instead, the employees must reconstruct the time worked and perform the arithmetic to determine if they were fully compensated. This claim is amenable to class treatment, even if there will be individualized proof of actual damages. *McKenzie v. Fed. Express Corp.*, 275 F.R.D. 290, 296, 299 (C.D. Cal. 2011) (certifying class attacking "identical" wage statement and widespread policy); *Adoma*, 270 F.R.D. at 553 (certifying a class claim of failing to itemize wage statements because common issues

1 predominate); *Ortega*, 258 F.R.D. at 373-74 (certifying class on defective pay stubs because truck
2 drivers were forced to analyze if they were paid for all hours worked and overtime); *see Jaimez*,
3 181 Cal. App. 4th at 1305-07 (certifying class under State law); *Cicairos*, 133 Cal. App. 4th at 953
4 (same).

### e. Timely Payment Upon Termination

Plaintiffs allege that Defendants systematically issue the final paycheck at the next, regularly scheduled pay period instead of complying with the statute that requires employers to pay an employee within 72 hours of being terminated from the job.

Defendants contend they will rely on the defense that allows an employer to delay final payment when they have a "good faith dispute that any wages are due." 8 Cal. Code Regs., tit. 8, § 13520 (2012); *FEI Enters., Inc. v. Yoon*, 194 Cal. App. 4th 790, 802 (2011).

The Court agrees with Plaintiffs. Whether or not Defendants are liable depends upon their standard procedure regarding the final check, even if the amount the injured employees recover is not identical. *Dilts*, 267 F.R.D. at 640 (certifying penalty claim for failure to timely pay wages upon termination); *Ortega*, 258 F.R.D. at 365-66 (certifying class, without objection, on failure to timely pay all wages at time of termination).

### f. Unfair Competition

Plaintiffs allege that Defendants' uniform payroll practices constitute unfair competition. Defendants challenge this claim based upon their assertion that the other claims would not be certified and thus it was purely derivative. Defs.' Opp. Br. at 34. Because the Court has certified other claims, however, this argument fails. *Dilts*, 267 F.R.D. at 640 (certifying claims for civil penalties and unfair competition); *Ortega*, 258 F.R.D. at 374. It is appropriate to certify a class of employees who challenge their employer's standard conduct. *See Corbett v. Super. Ct*., 101 Cal. App. 4th 649, 672 (2002); *Mass. Mut. Life Ins. Co. v. Super. Ct.*, 97 Cal. App. 4th 1282, 1286-88 (2002).

### 2. Class Action is Superior to Other Methods

The second requirement for (b)(3) is that the class procedure is "superior" to other methods, such as joinder, "for the fair and efficient adjudication of the controversy." Fed. R. Civ.

1  P. 23(b)(3). This factor "encompasses the whole range of practical problems that may render the
2  class format inappropriate for a particular suit." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 164
3  (1974).

4      The Court finds no management difficulties that would preclude this action from being
5  maintained as a class action. The potential management claims pertain to the calculation of each
6  individual's damages, and thus do not prevent certification on the common questions concerning
7  Defendants' liability. Many employees may be reluctant to file an individual lawsuit for fear of
8  retaliation. *Campbell v. PricewaterhouseCoopers, LLP*, 253 F.R.D. 586, 605 (E.D. Cal. 2008).
9  Moreover, damages per employee may not be large, thus, individual suits would not be cost
10 effective, and instead would burden the courts with duplicative cases. *Kamar v. Radio Shack*
11 *Corp.*, 254 F.R.D. 387, 406 (C.D. Cal. 2008) (uniform policies and procedures can be determined
12 from records possessed by the employer); *McKenzie*, 275 F.R.D. at 301-02 (finding employee
13 class action with civil penalties superior to numerous individual actions with small awards).

14 **<u>Conclusion</u>**

15     For the reasons stated above, the Court hereby **GRANTS** Plaintiffs' motion for class
16 certification.[5]  [Doc. No. 77] The Court certifies a class of all individuals employed in California
17 by Defendants QualxServ, LLC and Worldwide TechServices, LLC as a QualxServ Service
18 Partner, Service Partner, or Part Time Field Service Representative who were paid by piece-rate
19 compensation during the period from January 6, 2005 to present. The class claims are the second
20 through tenth causes of action alleged in the Consolidated Complaint. The Court appoints the law
21 firms of Blumenthal, Nordrehaug & Bhowmik in La Jolla and Krutcik & Georggin in Mission
22 Viejo as class counsel.
23 ///
24 ///
25 ///

26
27 [5] Defendants' brief contains extensive objections. Notably, Defendants devote a majority of their opposition brief arguing that the Plaintiffs' claims will fail on the merits. *Ellis*, 657 F.3d at 983 n.8; *United Steel, Paper & Forestry*, 593 F.3d at 808. To the extent the
28 Court has not specifically addressed a particular argument, the Court summarily denies the objection.

1  ///

2  ///

3  ///

4  ///

5       Within seven days of the filing of this Order, counsel shall contact Magistrate Judge

6  Mitchell Dembin's chambers to schedule a status conference.  After that conference, the

7  Magistrate Judge shall issue a scheduling order with all remaining pretrial dates so that this case

8  can proceed in an orderly and timely fashion.  Civ. Local R. 16.1(d).

9       **IT IS SO ORDERED**.

10

11  DATED: April 26, 2012

12                                          Hon. Anthony J. Battaglia

13                                          U.S. District Judge