1  **BLUMENTHAL, NORDREHAUG & BHOWMIK**
2     Norman B. Blumenthal (State Bar #068687)
      Kyle R. Nordrehaug      (State Bar #205975)
      Aparajit Bhowmik       (State Bar #248066)
3  2255 Calle Clara
   La Jolla, CA 92037
4  Telephone: (858) 551-1223
   Facsimile:  (858) 551-1232
5  Website: http://www.bamlawca.com

6  **KRUTCIK & GEORGGIN**
7     A. Nicholas Georggin, Esq. (State Bar #170925)
      Joo Hee Kershner, Esq. (State Bar #210015)
   26021 Acero
8  Mission Viejo, CA 92691
   Telephone: (949) 367-8590
9  Facsimile: (949) 367-8597

10 Attorneys for Plaintiff George Schulz and Plaintiff Pablo Cardona

11                      **UNITED STATES DISTRICT COURT**

12                     **SOUTHERN DISTRICT OF CALIFORNIA**

13

14

15 GEORGE SCHULZ, an individual;        **CASE No. 09 cv 0017 AJB (MDD)**
   PABLO CARDONA, an individual on      [Consolidated with 09 CV 2081]
16 behalf of himself, and on behalf of all
   persons similarly situated,

17                                       MEMORANDUM OF POINTS AND
                    Plaintiffs,          AUTHORITIES IN SUPPORT OF
                                         MOTION FOR FINAL APPROVAL OF
18 vs.                                   CLASS SETTLEMENT

19
   QUALXSERV, LLC, a Delaware
20 Company; WORLDWIDE
   TECHSERVICES, LLC, a Delaware
21 Company, and DOES 1 through 100,      Hearing Date: January 24, 2014
   inclusive,                            Hearing Time: 2:00 p.m.

22
                    Defendants.          Judge:       Hon. Anthony J. Battaglia
23                                        Courtroom:   Courtroom 3B (Schwartz)

24                                       Action Filed: January 6, 2009

25

26

27

28

# <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.    SUMMARY OF THE LITIGATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

III.   THE SETTLEMENT BEFORE THE COURT . . . . . . . . . . . . . . . . . . . . . . . . . . 6

IV.    THE SETTLEMENT MEETS THE CRITERIA NECESSARY FOR THIS
       COURT TO GRANT FINAL APPROVAL . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

V.     THE SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE . . . . . . . . . 12

       A.    The Test For Fairness . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

       B.    The Settlement Satisfies the Test For Fairness . . . . . . . . . . . . . . . . . . . . . 13

             1.    The Investigation and Discovery are Sufficient to Allow Counsel
                   and the Court to Act Intelligently . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

             2.    The Settlement was Reached Through Arm's Length
                   Bargaining . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

             3.    Counsel is Experienced in Similar Litigation . . . . . . . . . . . . . . . . . . 17

             4.    There are No Objectors to the Settlement and No Opt-Outs . . . . . . . . 17

             5.    The  Risk, Expense, Complexity, and Likely Duration of
                   Further Litigation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

VI.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

1

**TABLE OF AUTHORITIES**

2

3

**Cases:**                                                                                 **Page**

4
Armstrong v. Board of School Directors,
        616 F.2d 305, 325 (7th Cir. 1980)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

5

6
Brinker v. Superior Court,
        53 Cal. 4th 1004 (2012)14

7

8
Cotton v. Hinton,
        559 F.2d 1326, 1331 (5th Cir.1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

9

10
Fisher Bros. v. Cambridge-Lee Indus., Inc.,
        630 F. Supp. 482, 489 (E.D. Pa. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

11

12
Gattuso v. Harte-Hanks Shoppers, Inc.,
        42 Cal. 4th 554 (2007)14

13

14
Glass v. UBS Fin. Servs.,
        2007 U.S. Dist. LEXIS 8476 (N.D.Cal. Jan. 27, 2007)  . . . . . . . . . . . . . . . . . . . 10, 16

15

16
Hanlon v. Chrysler Corp.,
        150 F.3d 1011, 1026 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

17

18
In re Austrian & German Bank Holocaust Litigation
        80 F. Supp. 2d 164 (S.D.N.Y. 2000)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

19

20
In re Dept. Of Energy Stripper Well Exemption Litig.,
        653 F.Supp. 108, 115 (D.Kan.1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

21

22
In re Heritage Bond Litig.,
        2005 U.S. Dist. Lexis 13555 (C.D. Cal. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

23
Jones v. Nuclear Pharmacy, Inc.,
        741 F.2d 322, 324 (5th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

24

25
Kirkorian v. Borelli,
        695 F. Supp. 446, 451 (N.D. Cal. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

26

27
Laskey v. Int'l Union,
        638 F.2d 954 (6th Cir. 1981)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

28

Lopez v. City of Santa Fe,
        206 F.R.D. 285, 288 (D.N.M. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Lyons v. Marrud, Inc.,
        Fed. Sec. L. Rep. (CCH) ¶¶ 93,525 (S.D.N.Y. 1972) . . . . . . . . . . . . . . . . . . . . . . . 14

Marcus v. State of Kansas,
        209 F. Supp. 2d 1179 (D.Kan. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Officers for Justice v. Civil Service Com'n, etc.,
        688 F.2d 615 (9th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11-14

Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson,
        390 U.S. 414, 424-25 (1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Reed v. General Motors Corp.,
        703 F.2d 170, 175 (5th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Stoetzner v. U.S. Steel Corp.,
        897 F.2d 115 (3d. Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Waits v. Weller,
        653 F.2d 1288, 1291 (9th Cir 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Weinberger v. Kendrick,
        698 F.2d 61 (2d Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

**Statutes, Rules and Regulations:**

Fed. Rules Civ. Proc., rule 23 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

**Secondary Authorities:**

Newberg & Conte, Newberg on Class Actions, (3d ed. 1992) §11.41, pp. 11-91 . . . . . . . . 11

Plaintiffs George Schulz and Pablo Cardona ("Plaintiffs") respectfully move for final approval of the class settlement and for entry of the order granting final approval.

## I. INTRODUCTION

Plaintiffs reached a class settlement with Defendants Qualxserv, LLC and Worldwide TechServices, LLC ("WWTS" or "Defendants"), which this Court preliminarily approved by Order dated October 10, 2013. [Doc. No. 154].   In accordance with the preliminary approval order, the required notice of the proposed settlement was disseminated to the settlement class of 554 members.  Currently, the 236 claims submitted by the class claim over 58% of the total workweeks for the class with the claims period still open.[1]  No class member objected to the settlement.  The entire Common Fund of  Two Million Four Hundred Thousand Dollars ($2,400,000.00) (the "Common Fund") will be disbursed pursuant to the Joint Stipulation Re: Class Action Settlement and Release of Claims ("Settlement" or "Agreement"), and none of it will revert to Defendants.[2]  (Agreement at § III(L)(3).)

The parties request that the Court enter an order: (1) granting final approval to the proposed class action settlement; (2) finally certifying the settlement class; and (3) dismissing this action.[3]  As described below, the settlement is fair, reasonable, and adequate, and satisfies all requirements for final approval.

## II. SUMMARY OF THE LITIGATION

On January 6, 2009, Plaintiff Schulz filed a Complaint with class action and representative allegations in the United States District Court for the Southern District of

---

[1]  The claims period remains open until January 3, 2014, so the Declaration of the Claims Administrator to be filed before the hearing will set forth the final figures concerning the notice process and claims administration.

[2]  A true and correct copy of the Agreement is attached as Exhibit #2 to the Declaration of Norman Blumenthal "Decl. Blumenthal", served and filed herewith.

[3]  Plaintiffs previously filed the motion for an order approving the payment Class Counsel's attorneys fees and costs, and Plaintiffs' service awards [Doc. No. 156], which is scheduled for hearing at the same date and time.

California, entitled *George Schulz v. Qualxserv, LLC*.  On March 31, 2009, Plaintiff Cardona filed a Complaint with class action and representative allegations in the United States District Court for the Central District of California, entitled *Pablo Cardona v. Qualxserv, LLC*. Thereafter, the parties stipulated to transfer the *Cardona* action to the Southern District of California to be consolidated with *Schulz* (hereinafter collectively referred to as the "Action"). [Doc. No. 41].  In the Action, Plaintiffs assert claims for unpaid wages, expense reimbursement and penalties allegedly owed to certain of Defendants' Service Partners, Part Time Field Service Representatives, Tech I or Field Service Representatives, who were employed in California and paid (in whole or in part) by piece-rate compensation.  (Decl. Blumenthal, ¶ 6(a).)

By Order dated November 20, 2009, the Court ordered consolidation. [Doc. No. 42].  On July 27, 2010, the Plaintiffs filed a consolidated complaint. [Doc. No. 55].  On August 19, 2010, Defendants filed an answer to the consolidated complaint, asserting twenty-eight affirmative defenses. [Doc. No. 58].  (Decl. Blumenthal at ¶ 6(b).)

Substantial discovery took place in the Action.  During 2009 through 2011the Parties engaged in extensive discovery.  Thousands of documents were produced.  The depositions of Plaintiffs Schulz and Cardona were taken, and Plaintiffs deposed Defendants' corporate designees.  Plaintiffs retained experts and performed all of the work necessary for class certification.  (Decl. Blumenthal, ¶ 6(c).)

On April 1, 2011, Plaintiffs filed their motion for class certification. [Doc. No. 77]. Defendants opposed the motion with declarations and documentary exhibits. [Doc. No. 84]. After extensive briefing, the Court held oral argument on July 8, 2011 with respect to class certification. [Doc. No. 100].  By Order dated April 26, 2012, the Court granted the motion for class certification, and certified a class of all individuals employed in California by Defendants as a Qualxserv Service Partner, Service Partner or Part Time Field Representative who were paid by piece-rate compensation during the period from January 6, 2005 to the present. [Doc. No. 124].  (Decl. Blumenthal, ¶ 6(d).)

On or about May 10, 2012, Defendants filed a petition to appeal the Order granting class certification with the Ninth Circuit Court of Appeals pursuant to Rule 23(f). [Doc. No. 126].

1    Plaintiffs filed and answer to the petition.  By Order dated July 11, 2012, the Court of Appeals

2    in its discretion granted the petition to appeal. [Doc. No. 134].  (Decl. Blumenthal, ¶ 6(e).)

3            The Parties then conducted a meditation with Mark Rudy, a preeminent mediator of wage

4    and hour class actions on December 4, 2012.  While the mediation did not result in a settlement,

5    with the continued assistance of Mr. Rudy, the Parties were able to ultimately reach a class

6    settlement.  The appellate proceedings were stayed to permit the Parties to complete the

7    settlement and obtain the approval of this Court.  (Decl. Blumenthal, ¶ 6(f).)

8            Although a settlement has been reached, Defendants deny all of the claims asserted in

9    the Action, denies any and all liability or wrongdoing of any kind whatsoever associated with

10   any of the facts or claims alleged in the Action, and makes no concessions or admissions of

11   wrongdoing or liability of any kind whatsoever.  Defendants maintain that all of the members

12   of the Settlement Class were properly compensated and that Defendants complied with all

13   applicable federal, state, and local laws, regulations, and ordinances.  Defendants also take the

14   position that class certification cannot be maintained.  Nonetheless, the Parties have agreed to

15   avoid further litigation and to settle and resolve all the claims of the Settlement Class and

16   without any admission of liability or wrongdoing by either party.  The Plaintiffs and the Class

17   Counsel have concluded that the Settlement is fair, reasonable, and in the best interests of the

18   putative members of the Settlement Class and respectfully request that the Settlement be

19   approved by the Court.  (Decl. Blumenthal, ¶ 6(g).)

20           Plaintiffs contends that Defendants violated California wage and hour laws and that the

21   Action is appropriate for class certification on the basis that the Plaintiffs' claims meet the

22   requisites for class certification.  While continuing to deny that class certification would be

23   proper for litigation purposes, Defendants have stipulated that the above Settlement Class may

24   be certified for settlement purposes only.  (Agreement at § II.)  The Parties agree that

25   certification for settlement purposes is not an admission that class certification would be proper

26   if the class certification issue were litigated.  Further, this agreement is not admissible in this

27   or any other proceeding as evidence that the Settlement Class should be certified absent a

28   settlement.  Solely for purposes of settling the Action, the Parties stipulate and agree that the

requisites for establishing class certification with respect to the Settlement Class have been met and are met.  (Decl. Blumenthal, ¶ 6(h).)

Class Counsel has conducted a thorough investigation into the facts of the class action. Class Counsel has diligently evaluated the Class Members' claims against Defendants.  Prior to the Parties reaching an the agreement to settle the Action, Class Counsel reviewed all necessary information regarding the Defendants' policies and the payroll data for the Class Members.  Based on the foregoing data and their own independent investigation and evaluation over the previous three years, Class Counsel believes that the settlement with Defendants for the consideration and on the terms set forth in the Agreement is fair, reasonable, and adequate and is in the best interest of the Settlement Class in light of all known facts and circumstances, including the risk of significant delay, the likelihood that Defendants would prevail on its defenses, and the pending appellate issues.  Accordingly, the agreement to settle did not occur until Class Counsel possessed sufficient information to make an informed judgment regarding the likelihood of success on the merits and the results that could be obtained through further litigation.  (Decl. Blumenthal at ¶ 7(a).)

After significant law and motion practice and voluminous discovery, the parties began to discuss early resolution and scheduled a mediation.  The Parties held a private mediation before Mark Rudy, one of the preeminent mediators of wage and hour class actions.[4]  Counsel for the Parties, after settlement negotiations lasting the entire day, were unable to reach an agreement.  Nevertheless, counsel for the Parties continued their negotiations and discussions through Mr. Rudy, and were ultimately able to reach a settlement based upon Mr. Rudy's expertise as a mediator and the uncertainties of protracted litigation.  Over the next several months, the Parties negotiated the full terms and language of the Agreement. As a result of these negotiations, the parties reached a class settlement that they believe to be fair and reasonable in light of the experience of the Parties' attorneys as counsel in other wage and hour cases, and

---

[4]  The Parties previously engaged in a mediation and settlement negotiations before Hon. Edward Infante (Ret.) on April 15, 2010, but were unable to reach a settlement in this first mediation.

1   the uncertainties and cost of the years of litigation the Parties faced if the settlement was not

2   reached. (Decl. Blumenthal at ¶ 7(b).)

3        After the settlement negotiations, the specific terms of the Agreement required additional

4   negotiation before the final written agreement could be signed.  Even after the parties reached

5   an agreement as to the basic terms, Class Counsel had to ensure that the terms of the final

6   settlement agreement were fair to every member of the class and retained the requisite

7   opportunities for notice, exclusion, and objection in accordance with class action law.  (Decl.

8   Blumenthal ¶ 7(c).)  The Agreement reached represents a compromise and settlement of highly

9   disputed claims.

10       Under the terms to which the Parties have agreed, Defendant has agreed to establish a

11  Common Fund ("Common Fund") of Two Million Four Hundred Thousand Dollars

12  ($2,400,000.00) (the "Common Fund") to be distributed to the according to the plan of

13  allocation in the Agreement, as payment in full of all of the Class Released Claims, including

14  Class Counsel's attorneys' fees and expenses, the Class Representatives' Incentive Awards,

15  costs of claims administration and notice, and the PAGA payment.  (Agreement at § XII.).  This

16  is a non-reversionary settlement, which means that once the Agreement is final and effective,

17  no part of the Common Fund shall revert to Defendants.  (Agreement at § III(L).)

18       The Settlement Class consists of "All individuals who are, or were, employed by

19  Defendants Qualxserv, LLC and/or Worldwide Techservices, LLC in California as a QualxServ

20  Service Partner, Service Partner, Part Time Field Service Representative, WW Tech I or Field

21  Service Representative, who were paid (in whole or in part) by piece-rate compensation at any

22  time during the Class Period. The Class Period is from January 6, 2005 through March 31,

23  2013."  (Preliminary Approval Order at ¶ 2 [Doc. No. 154].)

24       On October 10, 2013, this Court ruled at the preliminary approval stage that "The Court

25  finds that the Settlement is the product of informed, non-collusive, and arm's-length

26  negotiations. The Settlement appears, upon preliminary review, to be within the range of

27  reasonableness".  (Preliminary Approval Order at ¶ 3 [Doc. No. 154].)  Notice of the settlement

28  providing class members with an opportunity to file a claim for monetary relief,  to opt out, or

to object was then mailed on or about November 4, 2013 to the 554 individuals who comprise the Settlement Class. The results were that no Class Members objected to the settlement. (Decl. Blumenthal at ¶ 4.)

Importantly, the fairness of this settlement is evidenced by the positive response of the Class. (Decl. Blumenthal at ¶ 7(f).) As will be detailed in the Declaration of the Claims Administrator, to date, 236 class members submitted claim forms which represents a current claims rate of more than 58% of the total workweeks for the eligible individuals in the Class, and evidences favorable reception of the class to this Settlement. (Decl. Blumenthal at ¶ 4.)

## III.   THE SETTLEMENT BEFORE THE COURT

For purposes of this Settlement, the "Settlement Class" are defined as follows:

> All individuals who are, or were, employed by Defendants Qualxserv, LLC and/or Worldwide Techservices, LLC in California as a QualxServ Service Partner, Service Partner, Part Time Field Service Representative, WW Tech I or Field Service Representative, who were paid (in whole or in part) by piece-rate compensation at any time during the Class Period. The Class Period is from January 6, 2005 through March 31, 2013.

(Preliminary Approval Order at ¶ 2 [Doc. No. 154].)

Under the terms to which the Parties have agreed, Defendant agrees to pay Two Million Four Hundred Thousand Dollars ($2,400,000.00) (the "Common Fund") to be paid as compensation for all alleged damages and in consideration for the settlement and dismissal with prejudice of the Action and the related release of the Class Released Claims. (Agreement at § III(M).) The Common Fund includes all of the following elements: Fee and Expense Award; payments to Verified Claimants (as described in the Agreement); any and all taxes or other amounts required to be withheld or paid, including employee and employer payroll taxes, as a result of payments to Verified Claimants; Incentive Awards; payment under the Private Attorneys General Act ("PAGA") to the Labor Workforce Development Agency ("LWDA"); Defendants' payroll taxes on the portion of the Net Common Fund designated as wages; and Administration Costs. The Common Fund is being paid to the Claims Administrator by Defendants through monthly payments of One Hundred Thousand Dollars ($100,000.00) with the first payment having been made March 27, 2013, and continuing monthly thereafter until

the entire Common Fund amount is paid in full.  (Agreement at § III(M).)  This is a non-reversionary settlement, which means that once the Agreement is final, no part of the Common Fund shall revert to Defendants.  ((Agreement at § III(M).) (Decl. Blumenthal at ¶3(a).)

The Net Common Fund shall be defined as the value of the Common Fund less the above deductions. (Agreement at § III(X).)   The Net Common Fund shall be allocated to the Settlement Class as follows:  Each Settlement Class Member will be entitled to a pro rata portion of the Net Common Fund, provided that the Settlement Class Member submits a valid and timely Claim Form.  Settlement Shares will be awarded from the Net Common Fund based on each Verified Claimant's Percentage Share of the Total Work Weeks multiplied by the Net Common Fund.   (Agreement at § XII(F).)   The Percentage Share means each Verified Claimant's total Work Weeks divided by the Total Work Weeks.  (Agreement at § III(BB).) The Net Common Fund shall be paid in three distributions with (I) the first distribution occurring no later than fifteen (15) days after the Effective Date of the settlement, (ii) the second distribution occurring no later than one (1) year after the Effective Date of the settlement, and (iii) the third distribution occurring no later than fifteen (15) days after the last payment from Defendants is received.  (Decl. Blumenthal at ¶ 3(b).)

Any initially unclaimed Settlement Share shall be distributed pro rata to Verified Claimants.  (Agreement at § VIII©.)  Checks not negotiated within 180 days from their issue are void (as stated on the check) and the amount of that Settlement Share shall be transmitted to the California Department of Industrial Relations - Industrial Relations Unpaid Wage Fund as unclaimed funds. (Agreement at § XII(F).)   (Decl. Blumenthal, ¶ 3©.)

From the Common Fund, Ten thousand U.S. dollars and no cents ($10,000.00) of the Common Fund (the "PAGA Payment") shall be allocated to claims under the Labor Code Private Attorney General Act of 2004, California Labor Code §§ 2698 et seq.  (Agreement at § XII(E).)  Pursuant to California Labor Code section 2699(I), seventy-five percent (75%) thereof shall be paid to the LWDA and the remaining twenty-five percent (25%) included in the Net Common Fund for distribution to the Verified Claimants.  The PAGA Payment will be paid

on a pro-rata basis at the same times as the distributions of the Settlement Shares to Verified Claimants. (Decl. Blumenthal, ¶ 3(d).)

Class Counsel shall apply to the Court for an award of attorneys' fees of One-Third of the Common Fund (Eight Hundred Thousand Dollars ($800,000.00)) in this Action. (Agreement at § XII©.) Class Counsel shall also recover from the Common Fund all costs and expenses actually incurred in the prosecution of the Action as set forth in Class Counsel's billing statements, in an amount not to exceed One Hundred Thousand Dollars ($100,000.00). Defendants agree not to oppose such an application. The Fee and Expense Award is included in, and shall come from, the Common Fund established pursuant to this Agreement and will be paid on a pro-rata basis at the same times as the distributions of the Settlement Shares to Verified Claimants. (Agreement at § XII©.) (Decl. Blumenthal ¶3(e).)

Plaintiffs shall apply to the Court for an Incentive Award which will not exceed Twenty Thousand Dollars ($20,000) each. Defendants agree not to oppose such application. The Incentive Awards are included in, and shall come from, the Common Fund and will be paid on a pro rata basis at the same times as the distributions of the Settlement Shares to Verified Claimants. The Incentive Awards shall be paid in exchange for general releases by Plaintiffs of all Released Parties and for their services performed as the class representatives over the last four (4) years of litigation. (Decl. Blumenthal ¶3(f).)

The Settlement in this case represents the compromise of vigorously disputed claims and therefore provides a substantial benefit for the Class. For the individuals whose claims are at issue in this Action, Plaintiffs reviewed the data and used information provided by defendant to determine the damage valuation. Plaintiffs calculated that the maximum recovery, assuming all potential damages were awarded at the maximum rate, totaled $26 million, which can be broken down as follows: overtime damages of $9,884,160, meal and rest break damages of $6,589,440 and expense reimbursement damages of $9,984,000. (Decl. Blumenthal, ¶8(d).)

Consequently, Defendant was subject to total potential damage claims of $26 million for the combination of damages, penalties and interest for the entire Settlement Class. The settlement of $2,400,000, before deductions, represents at least 9% of the estimated maximum

1  damages.  This settlement amount is fair and reasonable for several reasons.  First, the Court of

2  Appeals accepted the discretionary appeal as to class certification, which meant that not only

3  would there be significant delay of any recovery, but also the potential for class certification top

4  be reversed in whole or in part. While Plaintiffs believed in the propriety of class certification

5  in this case, the risk of reversal was real and of great concern.   The more important

6  consideration, however, was the Defendants' financial status and inability to pay.  In the petition

7  before the Court of Appeal, Defendants explained that the Action presented "potentially ruinous

8  liability" because the average net income for Defendants was "approximately $5 million."

9  Defendants provided financial statements to counsel for Plaintiffs to confirm Defendants'

10  inability to pay a significant judgment.  As a result, the Settlement here is discounted, not only

11  for the uncertainty of liability and proof and because of the pending review by the Court of

12  Appeals, but primarily because of the Defendants' financial situation. (Decl. Blumenthal at

13  ¶8(d)).

14        The settlement is fair, adequate and reasonable to the class and should be finally

15  approved.  (Decl. Blumenthal ¶3(g).)  In sum, this settlement valued at $2,400,000.00 is a fair

16  result and provides Class Members with the opportunity to receive a substantial recovery, in

17  many cases thousands of dollars. This result is in the best interests of the Settling Class in light

18  of the fact that liability in this case was far from certain in light of the defenses asserted by

19  Defendants.  (Decl. Blumenthal at ¶ 3(g).)

20  **IV.   THE SETTLEMENT MEETS THE CRITERIA NECESSARY FOR THIS COURT
          TO GRANT FINAL APPROVAL**

21

22        When a proposed class-wide settlement is reached, it must be submitted to the court for

23  approval. 2 H. Newberg & A. Conte, <u>Newberg on Class Actions</u> (3d ed. 1992) at §11.41, p.11-

24  87.  Court approval of a class settlement is considered at a final settlement approval hearing, at

25  which evidence and argument concerning the fairness, adequacy, and reasonableness of the

26  settlement may be presented and class members may be heard regarding the settlement.  *See*

27  <u>Manual for Complex Litigation, Second</u> §30.44 (1993).  During final approval, the court must

28  determine whether the settlement is fair, reasonable and adequate.  *See* <u>Officers for Justice v.</u>

1   Civil Service Com'n, etc., 688 F.2d. 615, 625 (9th Cir. 1982) and Fed. Rules Civ. Proc., rule

2   23(e).

3        Governing the settlement of class actions, the Federal Rules of Civil Procedure, §23 (e)

4   specifically provides:

> The court may approve a settlement, voluntary dismissal, or compromise that
> would bind class members only after a hearing and on finding that the settlement,
> voluntary dismissal, or compromise is fair, reasonable, and adequate.

7   F.R.C.P. § 23(e)(1).

8        Class action settlements should be approved where: (1) the proposed settlement is fairly

9   and honestly negotiated; (2) serious questions of law and fact exist placing the ultimate outcome

10   of the litigation in doubt; (3) the value of an immediate recovery outweighs the mere possibility

11   of future relief after protracted and expensive litigation; and (4) the parties have determined that

12   the settlement is fair and reasonable. Jones v. Nuclear Pharmacy, Inc., 741 F.2d 322, 324 (5th

13   Cir. 1984); Marcus v. State of Kansas, 209 F. Supp. 2d 1179 (D.Kan. 2002); Lopez v. City of

14   Santa Fe, 206 F.R.D. 285, 288 (D.N.M. 2002). Each of those four criteria is satisfied here.

15        As discussed in detail below, this Settlement was reached through arm's-length

16   negotiations before an experienced mediator. The Settlement was negotiated by experienced

17   counsel for the Class and represented by adequate class representatives, who protected the

18   interests of the Class Members. There were complex legal and factual issues that placed the

19   ultimate outcome of this litigation in doubt. Accordingly, the immediate value of the settlement

20   to the Class Members far outweighs the possibility of relief if this protracted and expensive

21   litigation had continued through trial and appeal. Finally, the considered judgment of Plaintiffs

22   and experienced Class Counsel is that the Settlement is fair and reasonable in light of the

23   immediate benefit provided by the Settlement to the Class Members, which is a conclusion that

24   is reinforced by the response of the Class Members submitting claims.

25        Settlements of disputed claims are favored by the courts. Waits v. Weller, 653 F.2d

26   1288, 1291 (9th Cir 1981) ("settlement encouraged in appropriate class action settlements"). In

27   evaluating settlements, the courts have long recognized that compromise is particularly

28   appropriate since such litigation is difficult and notoriously uncertain.

1    Settlement is especially favored in class actions because it minimizes the litigation

2  expenses of all parties and reduces the strain on judicial resources. <u>Officers for Justice</u>, <u>supra</u>,

3  688 F.2d at 625 ("voluntary conciliation and settlement are the preferred means of dispute

4  resolution. This is especially true in complex class action litigation"); <u>Cotton v. Hinton</u>, 559

5  F.2d 1326, 1331 (5th Cir.1977) ("Particularly in class action suits, there is an overriding public

6  interest in favor of settlement."); <u>In re Dept. Of Energy Stripper Well Exemption Litig.</u>, 653

7  F.Supp. 108, 115 (D.Kan.1986) ("It is in the interests of the courts and the parties that there

8  should be an end to litigation and the law favors the peaceful settlement of controversies.")

9    "[T]he court's intrusion upon what is otherwise a private consensual agreement

10  negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a

11  reasoned judgment that the agreement is not the product of fraud or overreaching by, or

12  collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair,

13  reasonable and adequate to all concerned." <u>Officers for Justice</u>, <u>supra</u>, 688 F.2d at 625.  Under

14  this standard, the court must decide whether the proposed settlement falls within the range of

15  reasonable settlements, taking into account that settlements are compromises between the

16  parties reflecting subjective, unquantifiable judgments concerning the risks and possible

17  outcomes of litigation.  <u>Id.</u>

18    In cases such as this one, courts have repeatedly emphasized that there is a strong initial

19  presumption that the compromise is fair and reasonable.  <u>In re Heritage Bond Litig.</u>, 2005 U.S.

20  Dist. Lexis 13555, at *11 (C.D. Cal. 2005).  Courts are advised not to adjudicate the merits of

21  the action, nor substitute their judgment for that of the parties who negotiated the settlement,

22  nor should they reopen and enter into negotiations with the litigants in the hopes of improving

23  the terms of the settlement.  <u>Id.</u>, at *11; <u>Officers for Justice</u>, <u>supra</u> 688 F.2d at 625.

24    The essential evaluation is whether, given the risks of litigation and the range of probable

25  results, the settlement, taken as a whole, is fair, reasonable and adequate to all concerned.

26  <u>Officers for Justice</u>, <u>supra</u> 688 F.2d at 625; <u>Hanlon v. Chrysler Corp.</u>, 150 F.3d 1011, 1026 (9th

27  Cir. 1998).  Here, the facts and circumstances compel the conclusion that the proposed

28  settlement satisfies that standard.

## V.      THE SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE

### A.      The Test for Fairness

To determine whether a proposed settlement is fair, reasonable, and adequate, courts consider some or all of the following factors: "(1) the strength of plaintiffs' case; (2) the risk, expense, complexity and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement." Officers for Justice, supra, 688 F.2d at 625; see also Staton v. Boeing Co., 327 F.3d 938, 959 (9th Cir. 2003).

The list of factors is not exhaustive and should be tailored to each case. Officers for Justice, at 625. Due regard should be given to what is otherwise a private consensual agreement between the parties. Id. The inquiry "must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." Id, at 625. "Ultimately, the [trial] court's determination is nothing more than 'an amalgam of delicate balancing, gross approximations and rough justice." Id.

The question whether a proposed settlement is fair, reasonable and adequate necessarily requires a judgment and evaluation by the attorneys for the parties based upon a comparison of "'the terms of the compromise with the likely rewards of litigation.'" Weinberger v. Kendrick, 698 F.2d 61, 73 (2d Cir. 1982), cert. denied 464 U.S. 818 (1983) (quoting Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424-25 (1968)). Therefore, many courts recognize that the opinion of experienced counsel supporting the settlement is entitled to considerable weight. Kirkorian v. Borelli, 695 F. Supp. 446, 451 (N.D. Cal. 1988); Reed v. General Motors Corp., 703 F.2d 170, 175 (5th Cir. 1983); Weinberger, 698 F.2d at 74; Armstrong v. Board of School Directors, 616 F.2d 305, 325 (7th Cir. 1980); Fisher Bros. v. Cambridge-Lee Indus., Inc., 630 F. Supp. 482, 489 (E.D. Pa. 1985). For example, in

Lyons v. Marrud, Inc., [1972-1973 Transfer Binder] Fed. Sec. L. Rep. (CCH) Paragraph 93,525 (S.D.N.Y. 1972), the court noted that "[e]xperienced and competent counsel have assessed these problems and the probability of success on the merits. They have concluded that compromise is well-advised and necessary. The parties' decision regarding the respective merits of their position has an important bearing on this case." Id. at ¶ 92,520.

**B.    The Settlement Satisfies the Test for Fairness**

       1.    The Investigation and Discovery are Sufficient to Allow Counsel and the Court to Act Intelligently

The stage of the proceedings at which this settlement was reached militates in favor of final approval of the settlement. The agreement to settle did not occur until after significant discovery was completed and class certification was granted. Therefore, Class Counsel possessed sufficient information to make an informed judgment regarding the likelihood of success on the merits and the results that could be obtained through further litigation. There was no need for continued litigation simply to reaffirm what was already known by the negotiating parties.

This class action was filed on January 6, 2009, on behalf of a putative class of current and former employees of the Defendants in California. The theory of the case was that unpaid wages, expense reimbursement and penalties were allegedly owed to certain of Defendants' Service Partners, Part Time Field Service Representatives, Tech I or Field Service Representatives, who were paid (in whole or in part) by piece-rate compensation. (Decl. Blumenthal ¶5).

Defendants denied the allegations, and asserted many defenses thereto. Defendants have expressly denied and continue to deny any wrongdoing or legal liability arising out of the conduct alleged in the Action. For example, Defendants contended that Settlement Class Members were compensated through a flat piece-rate structure for each service call, which included the compensation for preparatory activities and mileage expenses. As explained in the Cal. Div. of Labor Standards Enforcement Policies & Interpretations Manual ("DLSE Manual") § 2.5.1, piece-rate compensation can be a lawful method of compensation. In Gattuso v.

1    Harte-Hanks Shoppers, Inc., 42 Cal. 4th 554, 570 (2007), the California Supreme Court
2    expressly held "that section 2802 does not prohibit an employer's use of a lump-sum method to
3    reimburse employees for work-required automobile expenses, provided that the amount paid
4    is sufficient to provide full reimbursement for actual expenses necessarily incurred."  Thus,
5    Defendants argued that the piece-rate compensation was a lump sum sufficient to provide full
6    reimbursement of incurred mileage expenses.  With respect to the meal and rest break
7    allegations, Defendants argued that their policies were lawful under Brinker.  Therefore, as to
8    meal periods, Defendants argued that the recent Supreme Court decision in Brinker v. Superior
9    Court, 53 Cal. 4th 1004 (2012) weakened Plaintiff's claims, on liability, value, and class
10   certifiability.  While Plaintiffs believe that these defenses could be overcome, Defendants
11   maintain these defenses have merit and therefore present a serious risk to recovery by the Class.
12    (Decl. Blumenthal at ¶8©.)  The parties initiated settlement discussions to see if the case could
13   be resolved.

14           Class Counsel has litigated similar cases against other employers.  (Decl. Blumenthal at
15   ¶2.)  Although Plaintiffs and Class Counsel believed that their case had merit, they recognized
16   the potential risks that both sides would face if litigation of this action continued.  As the federal
17   court recently held in  Glass v. UBS Fin. Servs., 2007 U.S. Dist. LEXIS 8476 (N.D.Cal. 2007),
18   where the parties faced uncertainties similar to those in this litigation:

19           In light of the above-referenced uncertainty in the law, the risk, expense,
             complexity, and likely duration of further litigation likewise favors the settlement.
20           Regardless of how this Court might have ruled on the merits of the legal issues,
             the losing party likely would have appealed, and the parties would have faced the
21           expense and uncertainty of litigating an appeal. "The expense and possible
             duration of the litigation should be considered in evaluating the reasonableness
22           of [a] settlement." See In re Mego Financial Corp. Securities Litigation, 213 F.3d
             454, 458 (9th Cir. 2000). Here, the risk of further litigation is substantial.
23
     Id. at *12.
24
             The parties exchanged information and argument concerning the merits of the Action.
25
     Plaintiffs prepared calculations of the damages under possible outcome scenarios.  Based upon
26
     this information and the calculations, Plaintiffs and Defendant initiated the negotiation process
27
     through mediation.  (Decl. Blumenthal at ¶ 7(a).)
28

1    During the settlement negotiations, which were both contentious and arm's-length,

2  Defendants vigorously disputed liability.  Moreover, Defendants disputed that certified class

3  could be maintained because individual issues predominated, as the Court of Appeals had

4  granted a discretionary appeal of class certification.  While certified classes have been

5  maintained in other actions, class certification in this action would have remained a hotly

6  disputed and contested issue. (Decl. Blumenthal at ¶ 7(b).)

7    Based on the complexity of the case, the novelty of the legal issues, the substantial risks

8  and uncertainty of the outcome on liability issues, the pending appeal and the financial situation

9  of the Defendants, Plaintiffs believes that the Settlement is more than fair and in the in the best

10  interests of the Class Members.  There can be no doubt that counsel for both parties possessed

11  sufficient information to make an informed judgment regarding the likelihood of success on the

12  merits and the results that could be obtained through further litigation, given the relative

13  strengths and weaknesses of their positions.   (Decl. Blumenthal at ¶ 7(d).)

14    2.    The Settlement Was Reached Through Arm's Length Bargaining

15    This settlement was the result of arm's-length mediation between experienced counsel

16  before a preeminent mediator, Mark Rudy.  Through formal and informal discovery procedures,

17  Defendants disclosed information relating to its organization, the work performed by the class,

18  the size of the putative class, log-in information, and payroll data for the Class Members.  This

19  information permitted Class Counsel to evaluate liability and prepare a damage valuation.  After

20  comprehensive legal and factual analysis, including the factual and legal defenses asserted by

21  Defendants, Class Counsel possessed sufficient information for intelligent evaluation of the case

22  for purposes of settlement.  (Decl. Blumenthal at ¶ 7(a)-(b).)

23    Prior to the initiation of settlement discussions, Class Counsel reviewed and outlined the

24  case based upon the provided information, and determined the conditions of settlement which

25  would be fair and reasonable to the Class.  Class Counsel was experienced in the types of

26  settlement appropriate to resolve these claims, as Class Counsel has previously litigated and

27  settled other employment actions.  Initial informal discussions were productive and encouraged

28  both parties to further analyze their positions and to pursue formal mediation.   (Decl.

Blumenthal at ¶ 7(e).)

Following this discovery and discussion between counsel, the parties engaged in an all-day mediation with Mark Rudy. Counsel for the Parties, after settlement negotiations lasting the entire day, were unable to reach an agreement. Nevertheless, counsel for the Parties continued their negotiations and discussions through Mr. Rudy, and were ultimately able to reach a settlement based upon Mr. Rudy's expertise as a mediator and the uncertainties of protracted litigation. (Decl. Blumenthal at ¶ 7(b).) Most importantly, Plaintiffs and Class Counsel believe that this settlement is fair, reasonable and adequate.

By reason of the settlement, Defendant agreed to establish a Common Fund of Two Million Four Hundred Thousand Dollars ($2,400,000.00) to be distributed according to the plan of allocation in the Agreement. (Agreement at § III(M).) The Common Fund includes all of the following elements: Fee and Expense Award; payments to Verified Claimants (as described in the Agreement); any and all taxes or other amounts required to be withheld or paid, including employee and employer payroll taxes, as a result of payments to Verified Claimants; Incentive Awards; payment under the Private Attorneys General Act ("PAGA") to the Labor Workforce Development Agency ("LWDA"); Defendants' payroll taxes on the portion of the Net Common Fund designated as wages; and Administration Costs.

After the settlement negotiations, the specific terms of the Agreement required additional negotiation before the final written agreement could be signed. Even after the parties reached an settlement amount, Class Counsel had to ensure that the terms of the Settlement were fair to every member of the class and contained the requisite opportunities for notice, exclusion, and objection in accordance with class action law. (Decl. Blumenthal at ¶ 7©.)

By July 2013, the settlement agreement was finalized and executed, at which time the preliminary motion requesting Court approval of the settlement was prepared and filed by the parties on August 22, 2012. [Doc. No. 145]. On October 10, 2013, this Court held a hearing on the motion for preliminary approval, and the Court granted preliminary approval. [Doc. No. 96]. Notice of the settlement providing class members with an opportunity to opt out or object was then mailed by November 4, 2013 to the 554 individuals who comprise the Class. In

1   response to the notice, not one Class Member has objected to the proposed settlement and not

2   one Class Member requested exclusion from the Settlement.   (Decl. Blumenthal at ¶ 4.)

3   Plaintiffs and Class Counsel believe that this settlement is fair, reasonable and adequate.

4               3.      Counsel is Experienced in Similar Litigation

5          Class Counsel in this matter has extensive class action experience in many fields and has

6   represented thousands of persons nationwide in actions including labor and overtime litigation,

7   securities shareholder litigation, constitutional challenges to state and local statutes, collateral

8   protection insurance cases, consumer refund actions and tobacco litigation.  A list of previous

9   and current class action cases managed and settled by the Class Counsel in this action is

10  provided to the Court by way of Exhibit #1 to the Declaration of Blumenthal submitted in

11  support of this motion.  Class Counsel have participated in every aspect of the settlement

12  discussions and have concluded the settlement is fair, adequate and reasonable and in the best

13  interests of the Class.  (Decl. Blumenthal at ¶ 2 and ¶ 3(h).)

14              4.      There Are No Objectors to the Settlement and No Opt-Outs

15         After dissemination of the class notice to the 554 members of the Class, which provided

16  each class member with the terms of the settlement, **not one class member has filed an**

17  **objection to the settlement** and no class members requested exclusion from the settlement.

18  The deadline to opt out or object expired on December 19, 2014.  (Decl. Blumenthal at ¶ 4.)

19  The absence of any objector strongly supports the fairness, reasonableness and adequacy of the

20  Settlement. See In re Austrian & German Bank Holocaust Litigation 80 F. Supp. 2d 164, 175

21  (S.D.N.Y. 2000) ("If only a small number of objections are received, that fact can be viewed

22  as indicative of the adequacy of the settlement."); Stoetzner v. U.S. Steel Corp., 897 F.2d 115,

23  118-119 (3d. Cir. 1990) (29 objections out of 281 member class 'strongly favors settlement');

24  Laskey v. Int'l Union, 638 F.2d 954 (6th Cir. 1981) (The fact that 7 out of 109 class members

25  objected to the proposed settlement should be considered when determining fairness of

26  settlement.)

27         Importantly, every Class Member was given the opportunity to participate in the

28  Settlement under the same terms.  Currently, 236 Class Members timely submitted claims,

representing more than 58% of the total workweeks for the Settlement Class, with the claims period still being open. The final figures will be set forth in the Declaration of the Claims Administrator to be filed before the final approval hearing.

Here given the fact that not one Class Member objected and the significant number of work weeks claimed, the Court can conclude that the settlement is fair, reasonable and adequate.

5.   The Risk, Expense, Complexity, and Likely Duration of Further Litigation

The complexities and duration of further litigation cannot be overstated. As discussed above, Defendants asserted substantial and real defenses to this action. Even if Plaintiffs were successful on appeal in maintaining the certified class and prevailed at trial, there is little doubt that Defendant would post a bond and appeal in the event of an adverse judgment. A post-judgment appeal by Defendant would have required many more years to resolve, assuming the judgment was affirmed. If the judgment was not affirmed in total, then the case could have dragged on for years after the appeal. Moreover, Defendants established to Class Counsel through confidential financial documents that Defendants would be unable to pay a significant judgment. The benefits of a guaranteed recovery, of the very remedy that Plaintiffs would seek at trial, outweigh an uncertain recovery three or more years in the future. (Decl. Blumenthal at ¶ 8(a).)

Both the Plaintiffs and Class Counsel recognize the expense and length of a trial in this action against Defendant through possible appeals which could take at least another three years. Class Counsel also have taken into account the uncertain outcome and risk of litigation, especially in complex actions such as this action. Class Counsel are also mindful of and recognize the inherent problems of proof under, and alleged defenses to, the claims asserted in the action. Moreover, post trial motions and appeals would have been inevitable. Costs would have mounted and recovery would have been delayed if not denied, thereby reducing the benefits of an ultimate victory. Plaintiffs and Class Counsel believe that the settlement set forth in the Agreement confers substantial benefits upon the Settlement Class and each of the Class Members. Based upon their evaluation, Plaintiffs and Class Counsel have determined that the

settlement set forth in the Agreement is in the best interest of the Settlement Class.  (Decl. Blumenthal at ¶ 8(b).)

Similarly, Defendant has concluded that settlement of this action is desirable in the manner and upon the terms and conditions set forth in the Agreement in order to avoid the expense, inconvenience, and burden of further legal proceedings, and the uncertainties of trial and appeals.  There can be little doubt that the agreed upon settlement of claims is the most efficient and cost-effective method to provide payments to the members of the Class in exchange for a release of their claims.

## VI.    CONCLUSION

For the reasons stated herein, the parties respectfully submit that the proposed settlement satisfies the standard of fairness established by the federal courts and should therefore be finally approved.

Dated: December 23, 2013          **BLUMENTHAL, NORDREHAUG & BHOWMIK**

By:_____*/s/ Norman B. Blumenthal*_____
                Norman B. Blumenthal
                Attorneys for Plaintiffs